UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TRUSTEES OF THE LOCAL 1034 PENSION
TRUST FUND, *et al.*,

                             Plaintiffs,

       -against-

SUPERIOR LIMOUSINE SERVICE, INC.,
*et al.*,

                             Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22 CV 5684 (RPK) (CLP)

**POLLAK**, United States Magistrate Judge:

On September 22, 2022, plaintiffs Trustees of the Local 1034 Pension Trust Fund ("Pension Fund"), Trustees of the Local 813 Insurance Trust Fund ("Insurance Fund"), and Trustees of the Nurses and Local 813 IBT Retirement Trust Fund ("Nurses Fund") (collectively, "plaintiffs" or "the Funds"), commenced this action against defendants Superior Limousine Service, Inc. ("Superior Limousine" or "defendant"), XYZ Corporations 1–10, and John and Jane Does 1–10,[1] seeking to recover delinquent contributions and withdrawal liability, as well as statutory interest and liquidated damages, pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). (Compl.[2] ¶ 1).

Currently pending before this Court, on referral from the district court, is plaintiffs' renewed motion for default judgment (the "Renewed Motion" or "Mot.") (ECF No. 16; see also Electronic Order, dated Nov. 6, 2023). For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded a total of $306,977.67 in damages.

---

[1] Fictitious defendants XYZ Corporations 1-10 and John and Jane Does 1-10 were dismissed from the action without prejudice on November 22, 2022. (ECF No. 9).
[2] Citations to "Compl." refer to plaintiffs' Complaint, filed September 22, 2022. (ECF No. 1).

1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background leading to this dispute is set forth in detail in this Court's earlier Report and Recommendation, dated July 21, 2023, and is incorporated by reference herein (the "R&R") (ECF No. 13). The essence of the dispute is that plaintiffs are trustees of employee benefit funds (the "Funds") under ERISA, and third-party beneficiaries of a collective bargaining agreement ("CBA") between defendant Superior Limousine and Local 813, International Brotherhood of Teamsters. (R&R at 2). Plaintiffs allege that between September 23, 2019, and the date of filing the Complaint on September 22, 2022, Superior Limousine failed to remit $18,695.70 in contributions owed to the Funds under the CBA for covered employees who performed work between August 2019 and December 2021. (Id. at 2–3). In addition, as of December 31, 2021, Superior Limousine effectuated a complete withdrawal within the meaning of ERISA, 29 U.S.C. § 1383(a), owing withdrawal liability to the Funds in the amount of $296,114.00, payable in monthly installments beginning on or before April 25, 2022. (Id.)

When Superior Limousine failed to make the first monthly installment, the Trustees accelerated the outstanding withdrawal liability as provided for in accordance with ERISA, demanding that Superior Limousine pay the full $296,114.00 by May 20, 2022. (Id. at 3–4). On October 21, 2022, following defendant Superior Limousine's failure to appear, make any payments toward the withdrawal liability, seek review of the amount, or commence arbitration, the Clerk of Court entered a certificate of default against Superior Limousine. (ECF No. 7). Thereafter, plaintiffs moved for entry of a default judgment against Superior Limousine (ECF No. 10), which motion was referred to the undersigned to prepare a Report and Recommendation. (Electronic Order, dated Nov. 28, 2022). Plaintiffs' original motion for default judgment sought damages in the total amount of $251,041.50, consisting of $183,600.00

2

in withdrawal liability, $12,025.80 in accrued interest, $36,720.00 in liquidated damages, and $18,695.70 in delinquent contributions, interest and liquidated damages. (ECF No. 10).

On July 21, 2023, this Court recommended that plaintiffs' motion for default judgment be denied without prejudice to renew based on plaintiffs' failure to comply with Local Civil Rule 7.1(a)(2) and (3). (R&R at 14). Specifically, plaintiffs failed to provide any "supporting affidavits and exhibits thereto" containing the factual information necessary to analyze plaintiffs' counsel's representations as to the amounts owed by defendant, nor did they provide any explanation as to how the amounts listed in counsel's affidavit were calculated. (Id. at 12). On August 23, 2023, the district court adopted the Court's recommendation and denied plaintiffs' motion without prejudice. (Electronic Order, dated Aug. 23, 2023).

Plaintiffs filed their Renewed Motion on November 3, 2023. In support thereof, plaintiffs submitted a Memorandum of Law ("Pls.' Mem.") (ECF No. 16-1), a declaration by Sharon Huang, the administer of the relevant Pension and Trust Funds ("Huang Decl.") (ECF No. 16-2), and a declaration by Dominick Giglio, the accounting manager of the relevant Funds ("Giglio Decl.") (ECF No. 16-11). This Court issued an Order on January 2, 2024, advising defendant of the opportunity to submit papers in response to plaintiffs' Renewed Motion and indicating that if defendant chose not to file anything or request a hearing, the Court would decide the Renewed Motion on the papers. (ECF No. 19). Defendant neither requested a hearing nor filed any documentation in opposition to the Renewed Motion.

## DEFAULT JUDGMENT

The Court first addresses the question of whether default judgment should enter against the defendant as to some or all of plaintiff's claims. This analysis requires the Court to determine whether the allegations contained in the Complaint, taken as true for purposes of a motion for default judgment, establish liability on the part of the defendant for the conduct

3

complained of in the Complaint. As described in detail below, the Court concludes that default judgment is appropriate as to both plaintiffs' delinquent contributions claim and plaintiffs' withdrawal liability claim.

I. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Fed. R. Civ. P. 55(a). Second, after the Clerk of Court enters a default against a party, the court may enter a default judgment thereagainst if that party fails to move to set aside the default pursuant to Rule 55(c). Fed. R. Civ. P. 55(b).

In determining whether a default judgment should enter, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018). While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Circuit instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), report and recommendation

4

adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023). Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. at 162. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because the defendant is in default. See, e.g., id.

Courts have significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including:

1) Whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings");

2) "[W]hether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *2 (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. 1992)); and

3) "[T]he amount of money potentially involved. The more money involved, the less justification for entering the default judgment." Id. (internal citations omitted).

When a defendant defaults, the defendant is typically deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). However, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. In either event, the Court must review the

5

allegations in the Complaint and/or factual averments to determine if the elements of each claim have been adequately pleaded. See id.; Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (adopting report and recommendation and explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief"). Moreover, the Court may, in deciding whether to grant default judgment, consider whether there are unresolved questions regarding material issues of fact as to liability, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2685 (4th ed. 2023) (discussing the aforementioned factors).

II. Default

In this Court's July 21, 2023, Report and Recommendation, the Court analyzed the requirements under Rule 55 to determine if plaintiffs had carried their burden of demonstrating that they were entitled to a default judgment. The Court found that it was beyond dispute that the defendant was in default because it has failed to appear in this action, not responded to the Complaint, nor contested this motion for default judgment. (R&R at 8 (citing Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *1–2)). Moreover, because Superior Limousine failed to retain counsel, that alone "constitute[d] a failure to defend because corporations cannot proceed in federal court *pro se.*" (Id. (quoting La Barbera v. Federal Metal & Glass Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009))). Those conclusions apply with equal force here. Defendant has been afforded countless opportunities to appear, including after plaintiffs submitted the instant Motion. (See Electronic Order, dated Jan. 2, 2024). Defendant has not availed itself of any of these opportunities. Thus, it remains beyond dispute that defendant is in default.

6

III. <u>Adequacy of Pleadings</u>

    A.    <u>Claim for Delinquent Contributions</u>

Plaintiffs have brought a claim under Section 515 of ERISA, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In order to establish liability under Section 515 of ERISA, plaintiffs must prove that the defendant: "(1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions." <u>Bakery and Confectionary Union v. Mrs. Maxwell's Bakery, Inc.</u>, No. 21 CV 0308, 2022 WL 18107257, at *5 (E.D.N.Y. Dec. 6, 2022) (citing <u>Health & Welfare Fund of the United Food & Com. Workers Loc. 2013 v. Precision Abstract, LLC</u>, No. 16 CV 4690, 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017) <u>report and recommendation adopted</u>, 2017 WL 4296740, at *1 (Sept. 26, 2017)).

Plaintiffs allege that defendant "is a for-profit domestic corporation" with "employees performing covered work at rates set forth in the CBA." (Compl. ¶¶ 11, 14). Plaintiffs' Complaint also asserts that defendant was required, pursuant to a CBA, to contribute certain amounts to the Funds to those employees. (<u>Id.</u> ¶¶ 14–16). Finally, plaintiffs allege that "Superior Limousine has failed to remit the requested payments" pursuant to the CBA. (<u>Id.</u> ¶ 17). In the context of this Motion, in which defendant has elected not to challenge plaintiffs' claims, the Court accepts these uncontested allegations as true. Accordingly, the Court finds that plaintiff has established liability under 29 U.S.C. § 1145, and that default judgment should enter against Superior Limousine with respect to plaintiffs' claims thereunder.

7

B.  Claim for Unpaid Withdrawal Liability

Plaintiffs have also alleged a claim for withdrawal liability. ERISA specifies that a complete withdrawal occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). Upon such withdrawal, the plan sponsor is empowered to "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." Id. § 1382. The employer then has 90 days to request that the sponsor review its withdrawal liability determination and submit any disputes about the amount of liability to arbitration. Id. §§ 1399(b)(2), 1401(a)(1). Further, "in the event of a default, a plan sponsor may request immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest." Id. § 1399(c)(5).

To establish a claim for unpaid withdrawal liability, a plaintiff "must 'show only that it complied with statutory procedural requirements.'" Division 1181 Amalgamated Transit Unions v. D&A Bus Company, Inc., 270 F. Supp. 3d 593, 608 (E.D.N.Y. 2017) (citing Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03 CV 4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan 15, 2004)). In other words, the plaintiff "must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." Id. at 608–09 (citing Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., 2004 WL 67480, at *2).

Here, plaintiffs allege that defendant Superior Limousine permanently ceased to have an obligation to contribute to the Pension Fund, thus effecting a complete withdrawal within the meaning of 29 U.S.C. § 1383(a). (Compl. ¶ 18). According to the Complaint, defendant was

8

required to pay its allocated share of the unfunded vested liabilities of the Pension Fund but failed to do so as required by ERISA. (Id. ¶¶ 19, 21). According to the Declaration of Sharon Huang, Administrator of the Local 1034 Pension Trust Fund, as of November 3, 2023, the defendant had not made any payments toward the withdrawal liability, nor had it requested review or initiated an arbitration to challenge the assessment. (Huang Decl. ¶ 9). Plaintiffs further state that they "notified Superior Limousine of the amount of its withdrawal liability and the schedule pursuant to which payments were due, and demanded payment in accordance with that schedule." (Compl. ¶ 27). In light of the above, the Court finds that plaintiffs' allegations as to defendant's failure to meet its obligations constitute a plausible claim for withdrawal liability under ERISA, and that default judgment should enter as to that claim.

## DAMAGES

Having found that default judgment should enter against Superior Limousine with respect to plaintiffs' claims as described above, the Court next addresses the quantum of damages to which plaintiffs are entitled.

### I. Legal Standard

Even after a court has determined that default judgment should enter, the plaintiff must still establish his entitlement to the damages sought. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded"). Unlike with the question of liability, a defaulting

9

defendant is not deemed to have admitted all well-pleaded allegations concerning damages. See, e.g., Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.

In determining the appropriate measure of damages, the court is permitted to "conduct hearings" or make referrals as necessary. Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989)), report and recommendation adopted, 2018 WL 4119518 (E.D.N.Y. Aug. 29, 2018).

II. Delinquent Contributions

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These damages include:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

Id.; see also Iron Workers Dist. Council of W. New York and Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505–07 (2d Cir. 1995). As set forth below, the Court concludes that plaintiffs should be awarded $13,290.11 in delinquent

10

contributions, as well as $6,940.58 in accrued interest and liquidated damages in the amount of $6,940.58.

### A. Contribution Amounts Owed

Plaintiffs request a total of $13,290.76 in delinquent contributions. (Giglio Decl. ¶ 6). According to Mr. Giglio, the Accounting Manager for Local 1034 Pension Trust Fund and for Local 813 Insurance Trust Fund, Superior Limousine was party to two CBAs during the relevant period. (Id. ¶ 5). One CBA was in effect from April 1, 2017, until March 31, 2020 (the "2017 CBA"), and the other was in effect from April 1, 2020, until March 31, 2023 (the "2020 CBA"). (Id.) Under both of these CBAs, Superior was required to submit monthly remittance reports setting forth the employees who performed covered work that month and the hours and weeks they performed the work. (Id.) Based on the remittance reports, contributions for a particular time period were calculated based upon the number of weeks for which employees performed covered work, multiplied by the corresponding weekly rates set out in the relevant CBA for that period. (Id.) Attached as Exhibit A to Mr. Giglio's Declaration (ECF No. 16-12) is a summary of the contributions owed and not paid for the period August 2019 to September 2021. (Giglio Decl. ¶ 6, Ex. A).

For the month of January 2021, Superior failed to submit remittance reports and failed to make contributions to the Pension Fund. (Id. ¶ 6(b)). According to Mr. Giglio's estimate, Superior owed contributions for one employee for this month at the rates set forth in the CBA, resulting in a delinquency of $2,005.00 owe to the Insurance Fund and $583.65 owed to the Pension Fund. (Id.) Mr. Giglio explains that when Superior failed to provide remittance reports, he was forced to estimate the number of weeks employees received earnings in a particular period. (Id.) Pursuant to the Funds' Contribution Collections Procedures, he added 10% to the number of days Superior reported for the last month in which they provided reports and then

11

multiplied that number by the applicable contribution rate according to the CBA. (Id. ¶ 7(a)–(b)). To determine the amount owed, Mr. Giglio then subtracted any amounts that Superior had paid from the total owed under the estimate, but since Superior had made no payments during the month, the amount of $2,005.00 was owed to the Insurance Fund and $583.65 was owed to the Pension Fund. (Id.)

For the work performed between February and April 2021, based on Mr. Giglio's calculations, Superior paid contributions for one employee for 13 weeks, but instead of paying at the rate set forth in the 2020 CBA—$128.40 per week—Superior paid only $116.73 per week, resulting in an underpayment of $151.71 owed in contributions to the Pension Fund. (Id. ¶ 6(a)). For covered work performed in May to September 2021, again Superior failed to make any contributions or submit remittance reports, so Mr. Giglio estimated that Superior owed contributions for 21 weeks for one employee, which, based on the rates in the 2020 CBA, resulted in Superior owing $7,854.00 to the Insurance Fund and $2,696.40 to the Pension Fund. (Id. ¶ 6(c)). In total, Mr. Giglio calculated that Superior owes plaintiffs $13,290.76 in delinquent contributions.

The Court finds Mr. Giglio's explanation of the calculations and the attached exhibit to provide a sufficient basis for awarding damages. See Bakery and Confectionary Union v. Mrs. Maxwell's Bakery, Inc., 2022 WL 18107257 at *8 (stating that "[h]aving no basis to conclude that the underlying rates or days worked are incorrect," the plaintiff's self-created damages calculations charts provided sufficient evidence to award damages (collecting cases)). Accordingly, having reviewed Mr. Giglio's Declaration and the exhibit attached thereto, the

12

Court respectfully recommends that the district court award plaintiffs $13,290.11 in delinquent contributions.[3] The Court's calculations break down as follows:

| Month/year | Fund | Weeks Worked | Amount Billed | Amount Paid | Amount Owed |
|---|---|---|---|---|---|
| Jan-21 | Insurance | 5 | $2,005.00 | $0.00 | $2,005.00 |
| Jan-21 | Pension | 5 | $583.00 | $0.00 | $583.00 |
| Feb-21 | Insurance | 4 | $513.60 | $466.92 | $46.68 |
| Feb-21 | Pension | 4 | $513.60 | $466.92 | $46.68 |
| Apr-21 | Pension | 5 | $642.00 | $583.65 | $58.35 |
| May-21 | Insurance | 4 | $1,496.00 | $0.00 | $1,496.00 |
| May-21 | Pension | 4 | $513.60 | $0.00 | $513.60 |
| Jun-21 | Insurance | 4 | $1,496.00 | $0.00 | $1,496.00 |
| Jun-21 | Pension | 4 | $513.60 | $0.00 | $513.60 |
| Jul-21 | Insurance | 5 | $1,870.00 | $0.00 | $1,870.00 |
| Jul-21 | Pension | 5 | $642.00 | $0.00 | $642.00 |
| Aug-21 | Insurance | 4 | $1,496.00 | $0.00 | $1,496.00 |
| Aug-21 | Pension | 4 | $513.60 | $0.00 | $513.60 |
| Sep-21 | Insurance | 4 | $1,496.00 | $0.00 | $1,496.00 |
| Sep-21 | Pension | 4 | $513.60 | $0.00 | $513.60 |
| Totals | | | $14,807.60 | $1,517.49 | $13,290.11 |

B.   <u>Interest</u>

ERISA specifies that, in the event of a judgment in favor of the plan, "the court shall award the plan . . . interest on the unpaid contributions." 29 U.S.C. § 1132(g)(2)(B). Such interest is to be calculated "using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(B). Here, the Trust Agreements and Collections Procedures provide for interest to be calculated using 1.5%. (Giglio Decl. ¶¶ 8–9, Ex. A). Mr. Giglio calculated interest from the date of the delinquency to the date on which such delinquent contributions were paid—or in this case until November 3, 2023, because the payments were not made—and determined that the Funds are entitled to interest in the amount of

---

[3] Plaintiffs' Motion requests damages in the amount of $13,290.76, which is 65 cents more than the appropriate award amount determined by the Court. The Court has therefore awarded plaintiffs the lower of the two figures.

13

$6,940.58. (Id. ¶¶ 8–9; see also Pls. Mem. at 7–8). Having reviewed the Giglio Declaration and the supporting documentation, the Court agrees with Mr. Giglio's calculation and concludes that plaintiffs should be awarded $6,940.58 in accrued interest owed on the delinquent contributions.

### C. Liquidated Damages

In the event of a finding that the employer owes delinquent contributions, ERISA also provides for the recovery of liquidated damages in an amount "equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the delinquency as determined by the court. 29 U.S.C. § 1132(g)(2)(C). Here, because the amount of accrued interest is greater than 20% of the delinquent contributions, plaintiffs seek an award of liquidated damages in the amount of $6,940.58. (Giglio Decl. ¶ 8(f)). The Court concludes that plaintiffs should be awarded the $6,940.58 in liquidated damages, which they have requested.

## III. Withdrawal Liability

In actions seeking recovery for nonpayment of withdrawal liability, plaintiffs are entitled to receive not only the total amount owed in withdrawal liability, absent any amounts paid, but also interest, liquidated damages, and reasonable attorney's fees and costs. See National Integrated Group Pension Plan v. Dunhill Food Equip. Corp., 938 F. Supp. 2d. 361, 364 (E.D.N.Y. 2013). As set forth below, the Court concludes that plaintiffs are entitled to $183,600.00 in damages for their withdrawal liability claims, as well as $48,103.20 in accrued interest and $48.103.20 in liquidated damages.

### A. Amount of Withdrawal Liability

In support of plaintiffs' request for an award of unpaid withdrawal liability, Mr. Giglio explained that the amount of withdrawal liability determined with respect to the Pension Fund was $183,600.00. (Giglio Decl. ¶ 10). As noted *supra*, when there is a complete withdrawal, the

14

plan sponsor determines the amount of withdrawal liability and notifies the employer of the amount owed. 29 U.S.C. § 1382. If, as here, the employer fails to ask for review within 90 days and fails to initiate arbitration, then the employer waives any right to contest the amount of withdrawal liability. Id. §§ 1399(b)(2), 1401(a)(1). Once the employer fails to initiate such arbitration and waives its right to contest the amount of withdrawal liability assessed by the plan sponsor, the district court will not make an independent determination as to the reasonableness of the calculations. See Gesualdi v. Seacoast Petroleum Products, Inc., 97 F. Supp. 3d 87, 98 (E.D.N.Y. 2015); Trustees of Local 813 Ins. Fund v. Freedom Demolition, Inc., No. 13 CV 2701, 2014 WL 5305983, at *5 (E.D.N.Y. Oct. 15, 2014) (noting that "[b]y failing to initiate an arbitration proceeding within sixty days thereafter, defendant waived its right to contest the amount of withdrawal liability calculated by plaintiffs").

Here, the plaintiffs notified Superior Limousine on February 23, 2022, that it had effectuated a complete withdrawal from the Pension Fund, that the allocated share was $296,114.00, and that plaintiffs demanded the company immediately remit the accelerated amount of $183,600.00. (Huang Decl. ¶ 8, Ex. H). Since Superior Limousine never requested review of the amount nor sought arbitration within the period set by statute, any challenge to the amount has been waived, and the Court is not in a position to review the requested amount. Thus, the Court concludes that plaintiffs should be further awarded damages in the amount of $183,600.00, representing defendant's withdrawal liability.

B. Interest

In accordance with Section 4219(c)(5), an employer who fails to comply with its obligations to pay withdrawal liability becomes liable for the full amount owed. See Vacca v. Bridge Chrysler Jeep Dodge, Inc., No. 06 CV 3543 2008 WL 4426875, at *7 (E.D.N.Y. Sept. 4, 2008). Section 4219(c)(5) provides as follows: "In the event of a default, a plan sponsor may

15

require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Under Section 4301(b) of ERISA, a failure to make a withdrawal liability payment is to be treated in the same way as a delinquent contribution within the meaning of Section 515 of ERISA. 29 U.S.C. § 1451(b). Section 515 provides that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Plaintiffs thus request an award of interest calculated in accordance with the Pension Fund's Withdrawal Liability Procedures, which provides for interest to be calculated at the rate of 1.5% per month. (Huang Decl., Ex. F). Here, Mr. Giglio calculated the amount of interest accrued on the $183,600.00 in withdrawal liability between May 20, 2022, the date of acceleration, until November 3, 2023, the date the motion for default judgment was filed. Having reviewed his calculations, the Court concludes that plaintiffs should be awarded $48,103.20 in accrued interest on the withdrawal liability.

C.     Liquidated Damages

As with the calculation of liquidated damages on the delinquent contributions, plaintiffs seek the greater of interest owed on the withdrawal liability or 20% of the total withdrawal liability. In this case, the $48,103.20 in interest owed is greater than 20% of the withdrawal liability. Accordingly, the Court concludes that plaintiffs should receive an award of $48,103.20 in liquidated damages.

IV.     Attorneys' Fees and Costs

ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for the fund's reasonable attorneys' fees. 29 U.S.C. § 1132(g)(2)(D). In this case, plaintiffs' papers do not seek an award of attorney's fees and costs and accordingly, the Court has not considered fees and costs in recommending damages.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that default judgment enter in favor of plaintiffs and that plaintiffs be awarded the following damages: 1) $13,290.11 in delinquent contributions; 2) $6,940.58 in accrued interest on the delinquent contributions; 3) $6,940.58 in liquidated damages on the delinquent contributions; 4) $183,600.00 in withdrawal liability; 5) $48,103.20 in accrued interest on the withdrawal liability; and 6) $48,103.20 in liquidated damages on the withdrawal liability, for a total award of $306,977.6733.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs shall promptly serve a copy of this Report and Recommendation on defendant by certified mail, return receipt requested, and provide the Court with proof of service immediately thereafter. The Clerk is directed to send copies of this Report and Recommendation to all other parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 18, 2024

*/s/ Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York